## T. P. WHITMAN et al. v. BENJAMIN GIESING et al., Appellants.

**Division One, December 23, 1909.**

1. **TITLE: Evidence: Certificate: Register's Books.** A county register's books in which is entered a certificate of entry of swamp land conveyed by act of Congress to the State, and by the State to the county, are not evidence of title, are not records required by law to be kept, but simply private books of the parties who made them, and therefore, neither a certified copy of them nor an abstracted entry of them in Carleton's Abstracts is admissible in evidence.

2. ———: **Certificate of Entry: Carleton's Abstracts: Blanks.** The columns of Carleton's Abstracts headed the "Instrument Executed," "Date of Instrument," "Date of Filing," and "Book" and "Page" where recorded, all being blank, show no "certificate of purchase" or "certificate of entry," and disprove and overthrow any claim of title based upon an abstract of a certificate of purchase from the county.

3. ———: **Certificate of Purchase: No Payment Shown.** Where there is no evidence that plaintiffs' ancestor, or anyone for him, ever paid to the county the money consideration for the vacant swamp land mentioned in the certified copy of the pretended certificate of entry abstracted in Carleton's Abstracts, a judgment for them cannot stand.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

REVERSED AND REMANDED (*with directions*).

*Faris & Oliver* and *Oliver & Oliver* for appellants.

(1) No plaintiff is entitled to a decree declaring the claim of another invalid until he has first shown that he himself has a better claim. This is true in equity as in law. If, therefore, the defendant's proof goes no further than to show that the plaintiffs' title is invalid, the plaintiff is not entitled to a decree. Wheeler v. Reynolds Land Co., 193 Mo. 291. (2) Having alleged that they "are the owners in fee," of this land, plaintiffs have limited their proof to a naked legal title, and nothing else. They cannot show an equitable title to support that allegation. Graton v. Land & Lumber Co., 189 Mo. 332; Stewart v. Lead Belt Co., 200 Mo. 289; Gage v. Cantwell, 191 Mo. 706. (3) The plaintiffs have failed to show that any legal title ever passed from Pemiscot county to their ancestor, Theodore P. Whitman. (4) The original of the so-called "certificate of entry" or "certificate of purchase" relied upon by plaintiffs, as the basis of their title, was not offered, and its whereabouts is not accounted for. It is the best evidence. Until some foundation was laid for the introduction of a copy of it, as secondary evidence; or some legal authority cited for the introduction of a copy of it, in lieu of the original, it was error to admit the copy. 1 Greenleaf on Ev. (16 Ed.), p. 170, secs. 82 and 84, p. 682, sec. 563a. (5) The copy of Carleton's Abstracts of the so-called "certificate of entry" does not show on its face who the Register was, whether a County Register of Lands, or the State Register of Lands, or the United States Register of Lands. There is no legal or competent evidence in this record showing that Theodore P. Whitman ever made an ap-

plication to the Register of Swamp Lands of Pemiscot county to purchase this section of land. (6) The trial court committed reversible error in admitting in evidence the copy of Carleton's Abstracts of the certificate of purchase, as noted on Carleton's Abstracts. The law did not require the recording, nor the filing, nor the depositing of the Register's certificates of purchase with the Recorder or the Circuit Clerk. And yet this copy constitutes the only evidence that plaintiffs have offered in support of their claim of ownership. Morressey v. Ferry Co., 47 Mo. 521; Carrington v. Potter, 37 Fed. 767; Haile v. Palmer, 5 Mo. 418; Greenleaf on Evidence (16 Ed.), secs. 485, 493. (7) Carleton's Abstracts do not show that Theodore P. Whitman ever paid one cent to the county of Pemiscot for this land. Under the Act of 1855, the Register was not authorized to receive the purchase money. And the fact that a certificate of purchase may have issued is no evidence whatever that the purchaser ever paid for the lands. Shaffer v. Detie, 191 Mo. 388; Tinker v. Kier, 195 Mo. 202.

*J. R. Brewer* for respondents.

(1) Conceding that the certified copy of the entry from Carleton's Abstracts, offered by plaintiffs, is false as to the following portion of it, viz.: "Certificate of entry No. 1153, date December 15, 1858, filed in Register's book No. 1, page 40," yet the remainder of said entry so certified, and the original on Carleton's Abstracts, offered by appellants, show a grantor—Pemiscot county; a grantee—Theodore P. Whitman; section 31, township 20, range 12 east, and a consideration—$773.73. How can all these facts exist and there be no conveyance from Pemiscot county to Theodore P. Whitman? These facts, shown by said entry are all the necessary and substantial elements of a conveyance. The recording of a deed is not an essential element of a conveyance. The date is not a necessary element of a

deed. No writer has ever yet laid down a proposition that the date is an element of a conveyance. The law making Carleton's Abstracts evidence recites that said abstracts were compiled from the records of conveyances of real estate in said county of Pemiscot, and we know that the usual course of the business of an abstracter is to compile from the deed records, then, how comes it that this entry is in Carleton's Abstracts? Where did he get it? According to the theory of appellants he must have taken it from a record in the recorder's office. The fact that a part of the certified copy of an entry from Carleton's Abstracts is false does not make that which is true incompetent. (2) If it be true that the county had conveyed the land in question to Theodore P. Whitman before the defendants obtained their patent from the county, then plaintiffs had a better title than the defendants for the defendants' attorneys who acted for the defendants in obtaining said patent had knowledge or notice that the county had previously conveyed this land to the said Theodore P. Whitman. The knowledge of an agent is knowledge of the principal. Hedrick v. Beeler, 110 Mo. 91. (3) There is nothing in the contention of defendants that plaintiffs ought to have accounted for the original before an entry from Carleton's Abstracts could be offered in evidence, for the following reasons: (a) If the entry on Carleton's Abstracts was taken from the certificate of purchase, then the copy required by the Act of 1854 cited by appellants to be sent to the Register of Lands, at Jefferson City, was returned to Pemiscot county before the courthouse burned, for Laws 1857, page 269, required the Secretary of State to return them to Pemiscot county, and the evidence of plaintiff, Theodore P. Whitman, Jr., that the conveyance by Pemiscot county to Theodore P. Whitman, his father, was lost. (b) The objection "that there is no authority of law for the use of, or for the offering in evidence of any entry from Carleton's Abstracts; that

there is no foundation so far laid either by offering any law relating to Carleton's Abstracts and making it evidence or any other proper legal showing why the paper in question should be admitted" is too broad and not specific enough to prevent the offering of secondary evidence. The objector should have called the trial court's attention to the specific reason, to-wit: there was no accounting for the original. 9 Encyclopaedia of Evidence, p. 78 e; Keim v. Railroad, 90 Mo. 314.

L. L. *Collins* of counsel for respondents.

(1) Carleton's Abstract being the only writing, and record evidence respecting the transfer of this land prior to the destruction of the records, and Carleton being an abstracter, a lawyer, painstaking and careful in the compilation of said abstract, the recitals therein were admissible as evidence, under the common law, the same being the very best evidence obtainable. 3 Wigmore on Evidence, secs. 1702 and 1705; Davis v. Montgomery, 205 Mo. 280; Smith v. Lindsey, 89 Mo. 80; Crane v. Daramon, 98 Mo. 567; State ex rel. v. Goodhue, 74 Mo. App. 165; Van Pelt v. Pary, 218 Mo. 700; Ward v. Garnons, 17 Ves. Jr. 134. (2) The page of Carleton's Abstract, page 12, recites that Pemiscot county as grantor conveyed to Theodore P. Whitman as grantee the identical land in question and that the consideration for such conveyance was the sum of $773.73, yet said page fails to show the kind of instrument by which said land was conveyed, but said page does show that the number of said instrument was 1143, which number is explained and designated by the custodian of said abstracts to have been a certificate of purchase, yet without this explanation by the custodian, the law would at least presume that the instrument by which said Theodore P. Whitman took title to said land was such an instrument as would convey to him the legal title. (3) The recitals of this abstract

together with Theodore P. Whitman's claim to said land coupled with Pemiscot county's failure to claim said land for almost a half of a century, and coupled with the county's long acquiescence in Theodore P. Whitman's claim to said land, receiving taxes from him on said land, precluded and estopped the county in asserting claim to said land, which estoppel of the county operated against appellants at the time of their procurement of the patent aforesaid. Van Pelt v. Parry, 218 Mo. 680; Simpson v. Stoddard, 173 Mo. 421; Cramer v. Keller, 98 Mo. 279.

WOODSON, J.—This suit was instituted in the circuit court of Pemiscot county by the plaintiffs against the defendants, under section 650, Revised Statutes 1899, to quiet title to section thirty-one, township twenty north, of range twelve east, situate in said county.

The petition was in conventional form, and the answer contained, first, a general denial, and, second, a similar claim of title in themselves, and prayed that the title be ascertained and determined in their favor, as provided for by said statute. At the request of counsel for defendants, the trial court made the following special finding of facts, and gave the following conclusions of law, viz. (formal parts omitted):

"The court finds from the evidence in this case that the land in question, to-wit, all of section 31, in township 20, in range 12 east, in Pemiscot county, Missouri, was conveyed in 1850, to the State of Missouri, by an act of the Congress of the United States; that the same is swamp and overflowed lands as designated by said act of Congress; that the State of Missouri conveyed the same to Pemiscot county, Missouri; that on the 15th day of December, 1858, the said Pemiscot county, by its certificate of purchase, sold and conveyed to one Theodore P. Whitman said land and that the said Theodore P. Whitman paid said Pemiscot

county for said land the sum of $773 and issued, and delivered to the said Theodore P. Whitman a certificate of purchase for said land; that said section contains 718 acres. The court further finds that on the ——— day of August, 1874, the said Theodore P. Whitman departed this life and left surviving him as his only heirs at law his children, plaintiffs T. P. Whitman, A. T. Whitman, George Whitman, Maberry Whitman, Kate McClendan, Rachel Robertson, Mollie Sutton and Fannie Stone, and as his grandchildren, Annie Bass and T. P. Randolph, daughter and son of his daughter Rebecca, deceased.

"The court further finds from the evidence in this case that said land was on the 4th day of June, 1882, sold for taxes and that Sam Carleton became the purchaser at said tax sale and that said judgment on its face recites that the judgment was rendered against said real estate, but does not show that any person was the defendant in said tax suit. The court further finds from the evidence in this case that this suit was filed on the 6th day of July, 1904, and on the 15th day of July, 1904, process was duly served on the defendant; that thereafter, to-wit, on the 10th day of June, 1905, the defendant procured from said Pemiscot county a patent purporting to convey to defendants said land; that at the time said patent was issued and delivered to the defendants they had notice and knowledge of the fact that said land had been previously sold to said Theodore P. Whitman, deceased, by said Pemiscot county, as aforesaid, and that said Theodore P. Whitman had paid said county for said land the sum of $773.

"The court further finds that there was passed by the Forty-first General Assembly of the State of Missouri, the following law, approved March 28th, 1901, to wit: 'Section 1. A copy of an entry or entries from the abstracts known as "Carleton's Abstracts" relating to or affecting the titles to real estate in Pemiscot

county, verified by the affidavit of the person or persons in whose lawful custody said abstract may be, that the same is a true and correct copy of the entry or entries, shall be received as prima-facie evidence of the matter and entries therein contained in all courts and places within this State.'

"The court further finds from the evidence in this case that notice of the intention to apply to the Legislature of the State of Missouri to have said law passed had been published in Pemiscot county, Missouri, at least thirty days prior to the introduction into the General Assembly of this state such bill and that said notice stated the substance of the said contemplated law and that the evidence of such notice having been published was exhibited in the General Assembly before such act was passed and that said notice is recited in said act according to its tenor; and that said notice was published in the manner required by law and the time required by law, to-wit: That said notice of said intention to apply to the Legislature of the State of Missouri to have said law passed by said Legislature was published in the 'Twice-a-Week Democrat,' a newspaper published in said Pemiscot county, where the matter and things to be effected were situate, and that said notice was inserted in four separate publications of such newspaper and that the first insertion thereof was at least thirty days prior to the introduction of said contemplated bill.

"The court further finds from the evidence that on the 2nd day of December, 1882, the courthouse of Pemiscot county, Missouri, was destroyed by fire and all the deed records and other records of the recorder's office were in such fire.

"The court further finds from the evidence that said notice was signed by ten householders of Pemiscot county and that proof of the publication of said notice was made by the affidavits of the publishers of said

newspaper and to the said affidavit was attached a copy of said notice.

"CONCLUSIONS OF LAW.

"Upon these facts the court finds that the law is for the plaintiffs and that the plaintiffs are the owners in fee and that the defendants have no right, title or interest in and to said land, and that plaintiffs T. P. Whitman, A. T. Whitman, George Whitman, Maberry Whitman, Kate McClenden, Rachel Robertson, Fannie Stone and Mollie Sutton are each entitled to an undivided one-ninth interest in and to said land in fee, and that plaintiffs T. P. Randolph and Annie Bass are each entitled to an undivided one-eighteenth interest in fee in and to said land, and that defendants have no right, title or interest in and to said land."

The court then rendered judgment accordingly for plaintiffs.

Practically all the findings of fact are conceded to be true, or rather not disputed, except counsel for defendants insist that there was no legal evidence introduced tending to show that Theodore P. Whitman, the ancestor of plaintiffs and through whom they claim title by inheritance, ever owned the land in controversy.

The only evidence offered by plaintiffs tending to show Pemiscot county, which was the common source of title, ever conveyed the title to the land in controversy to said Whitman was a certified copy of an alleged entry in Carleton's Abstracts, which counsel for plaintiffs insist was admissible in evidence under the authority of an act approved March 28, 1901, referred to by the court in the special findings of fact.

Counsel for plaintiffs offered a certified copy of said entry, which reads as follows:

"Pemiscot County to Theodore P. Whitman, certificate of entry No. 1153, dated December 15th, 1858, Filed in Register's Book No. 1, page 40. Consideration $773.

"Above certificate of entry conveys all of section 31, township twenty, range 12 east. Certified as follows: (Certificate of Charles W. Shields read). Signed and sworn to by Shields July 25th, 1905. John W. Green, Clerk of the Circuit Court."

That offer was objected to by counsel for defendants for the reason that the entry offered in evidence is hearsay, and for the reason, second, that no authority of law has been shown making the entry whether certified or not evidence of land titles in any court in this state; third, because the paper offered and read by counsel as alleged evidence in this case is a private writing not made by any officer of any court in this state; and it is made and preserved merely by such private party for his own personal use and benefit, and because as yet no foundation of any kind whatever has been laid for offering the alleged abstract.

Those objections were overruled, and the entry was admitted in evidence, to which ruling defendants duly excepted.

The defendants, in support of their claim of ownership to this land, offered a patent from Pemiscot county to the defendants Benjamin and Caroline Giesing, dated June 19, 1905. This patent is regular and conforms to the statute and recites the full payment of seven hundred and eighty dollars to Pemiscot county, Missouri. The money was paid to the treasurer of that county.

For the purpose of disproving the correctness of the alleged "certified copy" of Carleton's Abstracts, offered by the plaintiffs, but limiting the probative effect of the offering to that purpose, the defendants offered in evidence the original page in Carleton's Abstract relating to section 31, township 20 north, of range 12 east. And that this court may have before it the actual physical arrangement of or original page of the abstract with every word, line, letter, mark, figure and

character that is found upon it, we herein below set out a copy of that page with everything on it that is on the original. Morever, we hereinbelow set out every word of the testimony of Charles W. Shields, who was at the time of this trial the legal custodian of Carleton's Abstracts. His testimony is a "word picture" of the original page in Carleton's Abstracts relating to this section. His testimony in full is as follows:

"My name is Charles W. Shields. I live in Caruthersville, Missouri. I am an abstracter. I am the lawful and legal custodian of what is known as Carleton's Abstracts. The abstract and copy which I furnished plaintiffs and verified on the 25th day of July, 1905, was made up from Carleton's Abstracts.

"Q. State if the book in my hand is the original Carleton's Abstract? A. Yes, sir. Q. State if you know in whose handwriting the written matter that appears upon this book at the page open, in whose handwriting the matter is? A. From my best knowledge and belief I think that is Carleton's handwriting. Q. You think it is Carleton's handwriting? A. Yes, sir. Q. State if this Carleton's Abstract is ruled off in columns? A. Yes, sir. Q. State what appears written in the first column; commencing on the left hand side of the page? A. 'Grantors.' Q. What is written in the next column immediately on the right? A. 'Grantee.' Q. In the next column? A. 'Quantity,' acres and hundredths. Q. In the next column? A. 'Parts of Section.' Q. The next? A. 'Consideration,' dollars and cents. Q. The next? A. 'Instrument Executed.' Q. The next column? A. 'Date of Instrument.' Q. The next? A. 'Date of Filing.' Q. Next? A. 'Dower Relinquished?' Q. The next? A. 'Book.' Q. Next? A. 'Page.' Q. The next column? A. 'Remarks.' Q. Those are the various columns and several headings as it appears on the original Carleton's Abstract? A. Yes, sir. Q. State under the head of 'Grantor' what is the first entry? A.

'Pemiscot County.' Q. Under 'Grantee?' A. 'Theodore P. Whitman.' Q. Under the 'Quantity' columns? A. '618 and 98-100th acres.' Q. Under the column, 'Parts of Section?' A. 'All.' Q. Under the column 'Consideration?' A. '$773.73.' Q. Under the column headed 'Instrument Executed?' A. Nothing. Q. It is blank? A. Yes, sir. Q. Under the column headed 'Date of Instrument?' A. That is blank. Q. Under the column headed 'Date of Filing?' A. That is blank. Q. Under the column headed 'Book?' A. That is blank. Q. Under the column headed 'Page?' A. That is blank. Q. Under the column headed 'Remarks?' A. Blank.

"Cross-Examined by Mr. Brewer.

"Q. Examine the same page in the abstract shown you by Mr. Oliver, and state what is the first line written on that page, commencing at the top of the first line? A. Carleton's Abstract. Q. What is underneath that, the next line? A. Section 31, township 20, north of range 12 east. Q. What is in the first column on the left hand margin? A. 1143. A. Tell the court what that is? A. That is . . . Objected to by counsel for defendants, because book speaks for itself. It is 1143 (no ruling). Q. Is that dollars and cents or what is it? Objection overruled. Exception noted. A. Well, after handling the books I have discovered that refers to the entry number. Q. That means the number of the entry that tract of land was? A. Yes, sir. Q. You can also discover that from an examination of what is known as the index book in that office? A. Yes, sir; also from re-filed instruments on record here. Q. So those entries referred to and the matters to which your attention has been called by counsel for defendants is in relation to section 31, 20, 12 east? A.. Yes, sir. Q. Then the method there is to put on each page and only one page the section, township and range, is it? A. Yes, sir; except where it is a Spanish grant cuts into a section, and they double up there.

Q. There is no reference to a Spanish grant there? A. No, sir.

"Mr. Oliver: 'We now desire to offer this page of Carleton's Abstract which relates to section 31, township 20 north, of range 12 east, as testified to and identified by the witness Shields. For the purpose only of contradicting the certified copy of abstract heretofore offered in evidence on part of plaintiffs, and limiting the probative effect of this entry for that purpose only.'

"Counsel for Plaintiff: 'We object to its introduction that way.'

"Mr. Oliver: 'This entire page so you (the Court) can see it.'

" (The Court inspects the page—no ruling.) ''

Which said page of Carleton's Abstract is in words and figures as follows:

## CARLETON'S ABSTRACT

### Section Thirty-one, Township Twenty, North of Range Twelve, East.

| GRANTOR | GRANTEE | Quantity Acr's | Quantity 100th | Parts of Sec'n | Considera-tion Dols. | Considera-tion Cts. | Instrument Execued | Date of Inment | Date of Filing | Dower Relinq-uished? | Book | Page | Re-marks |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1143 Pemiscot Co. | Theodore P. Whitman | 618 | 98 | all | $773 | 73 | | | | | | | |
| Mathew Wright and wife | Jas. Ward, Pressley Phillips, John L. Ross and R. R. Phillips | 80 | | j o (error) | $5000 | | Q C Deed | Oct. 1, 1855 | Oct. 10, 1885 | Yes | A | 191 | Sec. 31, 20, 13 |
| D. L. Goody and wife | Franklin Smith | 84 | 73 | d | $100 | | W Deed | Apr. 30, 1870 | July 6, 1870 | Yes | C | 586 | A mistake |
| Pemiscot Co., Relator | Wm, Sam Carleton | 618 | 98 | all | $100 | | Sheriff's Deed | Sept. 7, 1883 | Dec. 16, 1883 | | S R I | 15 | |
| Wm, Sam Carleton & Georgia A. Carleton | Eron R. Brüce | 618 | 98 | all | $10 | | Q C Deed | Sept. 27, 1885 | Sept. 30, 1891 | | 7 | 420 | 6—200 |

### Explanation—

| 37\|90 | | | |
|---|---|---|---|
| A | B | C | D |
| 34\|73 | E | F | G |
| H | I | J | K |
| 618.98 | L | M | N |
| O | P | | |

88-57    40 Ch    38-13

In due time defendants filed their motion for a new trial, which was as follows (formal parts omitted):

"1.    That the judgment of the court is against the law.

"2.    That the judgment of the court is against the evidence.

"3.    That the judgment of the court is against the law under the evidence.

"4.    That the court erred in refusing to admit competent, material and relevant testimony offered by the defendant upon the trial of this cause against the exceptions of the defendants at the time.

"5.    That the court erred in admitting incompetent, immaterial and irrelevant testimony offered by the plaintiffs upon the trial of this cause against the objections and exceptions of the defendants at the time.

"6.    That the court erred in its special finding of facts herein, said findings not being borne out either by the weight of evidence or by any evidence offered upon the trial of this cause.

"7.    That the court erred in its conclusions of law, said conclusions of law not being borne out by the facts proven upon the trial and not being the law of the case.

"8.    That under the law and the evidence the finding and judgment of the court ought to have been for the defendants instead of against them.

"9.    That the court erred in permitting the introduction of evidence, on the part of plaintiffs, over the objections of the defendants, and subject to such objections, and failing to make any ruling on the same at any time."

I.    The only evidence offered by respondents tending to show that Pemiscot county, the common source of title, ever conveyed the land in question

to Theodore P. Whitman, the ancestor of plaintiffs and through whom they claim title by inheritance, was the certified copy of the entry alleged to have been copied from Carleton's Abstracts of titles to real estate situate in that county.

Counsel for appellants contend: first, that said copy was inadmissible; and, second, that if admissible, then it was completely disproved and overthrown by the original abstract itself, which was introduced in evidence.

As regards the first contention, the exact question was presented to this court in the case of Nall v. Conover, 223 Mo. 477, wherein it was held that the Register's books referred to in Carleton's Abstracts were not public records required by law to be kept, but were the private books of the parties who made them, and for that reason neither they nor a certified copy of said abstract showing their contents were admissible in evidence.

That ruling is controlling in this case, and convicts the trial court of error in admitting them in evidence in this case.

II. The copy from Carleton's Abstracts of the certificate of entry introduced by respondents showed that Pemiscot county issued a certificate of entry of this land, numbered 1153, to Theodore P. Whitman, dated December 15, 1858, filed in Register's Book No. 1, page 40, and that the consideration was $773.

Conceded for the sake of the argument that this copy was admissible in evidence and that its showing made out a prima-facie case for respondents, still it was directly and positively disproved and shown to be false by the original abstract, which was also introduced in evidence. The original abstract, as well as the testimony of the witness Shields, the custodian thereof, shows that no "certificate of entry" or "certificate of purchase" appeared anywhere in Carleton's

Abstracts. The column of the abstract indicating the "instrument executed" is blank; so also are the columns showing the "date of the instrument" and the "date of the filing of the instrument," and so is the column blank which shows the "book and page" in which the instrument was recorded. The original abstract which completely disproved the copy thereof also completely disproved and overthrew respondents' prima-facie case made thereby; and the record failing to show they had any other evidence of title than said certificate, the circuit court should have peremptorily declared as a matter of law respondents were not entitled to the relief prayed, as it was requested to do by counsel for appellants. That refusal was reversible error.

III. There is still another valid objection to respondents' right to a recovery in this case, and that is, this record does not contain a word of evidence which remotely tends to prove that Theodore P. Whitman, or any one for him, ever paid the $773 consideration mentioned in the certificated copy of the certificate of entry mentioned in Carleton's Abstract. This fact, as shown by the cases of Nall v. Conover, supra, and Phillips v. St. Louis Union Trust Co., 214 Mo. 669, constitutes a perfect barrier to respondents' right to a recovery in this case.

We, therefore, reverse the judgment, and remand the cause, with directions to the circuit court to enter judgment against respondents and in favor of appellants, as prayed in their answer. All concur.